*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Crim. No. 09-257 (WJM) |
| v. | **OPINION** |
| **WYDOVE BROWN** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Defendant Wydove Brown is charged in a one-count Indictment with possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Presently before the Court is Defendant's motion to suppress: (1) physical evidence seized on or about November 12, 2008 pursuant to a warrantless search and (2) the fruits of that warrantless search and seizure. The Court held oral argument on Defendant's motions on October 19, 2009 and thereafter received supplemental briefing from the parties. After careful consideration of the parties' briefing and argument, Defendant's motions to suppress are **DENIED**.

**I.     BACKGROUND**

Defendant Brown offers the following facts by affidavit in support of his motion to suppress.[1] On November 12, 2008, Newark police officers observed Wydove Brown at or

---

[1] For the limited purpose of this motion, the Court will accept Defendant Brown's version of the facts as alleged in his affidavit. While the Government offers a different factual account, the Court will use Defendant Brown's facts to analyze his motion to suppress.

around 452 South 15th Street in Newark. (Brown Aff. ¶ 3.) After observing Defendant Brown, the officers accosted him and then allegedly searched him "for no reason." (*Id.* ¶ 5.) During this search, the officers removed keys from Brown's person. (*Id.*) These keys were for the car that Brown borrowed to drive to the area. (*Id.*) While Brown claims he did not identify the car or consent to a search of the car, at some point the officers figured out which car matched the keys. (*Id.* ¶ 8.) The officers next opened the locked, passenger-less vehicle and conducted a search. (*Id.* ¶ 7, 9.) During the search, the officers opened the glove compartment and found the gun in question. (*Id.* ¶ 7.) At the time of his arrest, Defendant Brown did not have a valid driver's license. In fact, Brown's license had been suspended on a prior date.

## II.  DISCUSSION

In the instant motion to suppress, Defendant argues that the officers' warrantless search was unjustified since he neither consented to the search nor voluntarily abandoned the gun at issue. Further, Brown states that the officers had no probable cause to search the vehicle. In response, the Government disputes Brown's version of events but contends that even under these facts, Brown lacks standing to challenge the search. Since standing is essential to Defendant's motion to suppress, the Court first will turn first to this threshold issue.

### A.  **Standing**

To establish standing to challenge a search, a defendant must demonstrate a

legitimate expectation of privacy in the place searched or the items seized by showing an actual, subjective expectation of privacy that society is prepared to recognize. *See California v. Greenwood*, 486 U.S. 35, 39 (1988); *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *see also United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000). The burden to demonstrate standing lies, as always, with the proponent of the motion to suppress. *See Baker*, 221 F.3d at 443.

Here, Defendant Brown moves to suppress the weapon found during a search of the vehicle he drove to 452 South 15th Street. Brown's counsel conceded during oral argument that at the time of arrest, Brown's driver's license was suspended. As such, by his own admission, Brown took possession of the car and drove to 452 South 15th Street without a valid driver's license. This is in clear violation of New Jersey law. *See* N.J.S.A. 39: 3-10 ("No person shall drive a motor vehicle on a public highway in this State unless the person ... is in possession of a validated permit, or a provisional or basic driver's license issued to him in accordance with this article."); *see also* N.J.S.A. 39: 3-40 ("No person to whom a driver's license has been refused or whose driver's ... has been suspended ... shall personally operate a motor vehicle during the period of refusal, suspension, revocation, or prohibition."). Thus, the Court is left to weigh whether Defendant Brown has a legitimate expectation of privacy in a vehicle that he is barred by law from driving.

While the Third Circuit has yet to opine on this issue, other Courts have found that

unlicensed defendants lack standing.  For example, in *United States v. Haywood*, 324 F.3d 514, 516 (7th Cir. 2003), the Seventh Circuit held that a defendant had no reasonable expectation of privacy where he operated a rental car without a license and noted, "Haywood should not have been driving any car, much less a rental car that Enterprise never would have given him permission to drive." *Id.*  In finding that Haywood's expectation of privacy was not reasonable, the Seventh Circuit focused on the fact that defendant could not lawfully operate the vehicle at issue.  *See also United States v. Crisp*, 542 F. Supp. 2d 1267, 1280 (M.D. Fla. 2008) ("Defendant's license had been revoked and he was not permitted to operate any vehicle ... society is not prepared to recognize Defendant's expectation of privacy as reasonable."); *United States v. Bailey*, Crim. No. 08-10031, 2009 WL 524730, at *3 (D. Mass. Feb. 26, 2009) (referring to *Haywood* and *Crisp* as "convincingly reasoned.").

Defendant Brown attempts to distinguish *Haywood* by construing it to hold that defendant lacked standing since he was both an unauthorized and unlicensed driver.  As such, Brown contends that *Haywood* is inapposite since he purports to have had permission to use the car.  Such a reading of *Haywood*, however, is true neither to its letter nor its spirit.  In fact, the Seventh Circuit did not determine whether permission of the owner was necessary or sufficient for standing.  *Haywood*, 324 F.3d at 516 ("Several circuits have examined [whether an unauthorized driver of a rental car has standing], though they have failed to reach a consensus. ... For now, we do not have to decide

4

which, if any, of the other circuits' rules or presumptions makes the most sense. That's because Haywood was not simply an unauthorized driver, he was also an unlicensed one."). Instead, since Haywood could not drive legally, the Seventh Circuit then found that his expectation of privacy in the vehicle was not reasonable.[2] Likewise, the Court here so holds under these facts.

### III.   CONCLUSION

Accordingly, Defendant Brown's motion to suppress the physical evidence seized on November 12, 2008 is denied for want of standing, and the motion to suppress the fruits of that search is denied as moot. *See United States v. Smith*, 522 F.3d 305, 306 n.2 (3d Cir. 2008) ("In the District Court Smith unsuccessfully argued that his statement should be suppressed as the 'fruit of the poisonous tree' ... In light of the result that we reach here that the seizure and search were lawful, there was no 'poisonous tree.'"). An order follows this opinion.

                                                                /s/ William J. Martini
                                                               **WILLIAM J. MARTINI, U.S.D.J.**

---

[2] Defendant Brown also cites to *State v. Lark*, 726 A.3d 294 (N.J. Super. Ct. App. Div. 1999), for the proposition that an unlicensed driver may have a legitimate expectation of privacy in a motor vehicle. A reading of *Lark*, however, reveals it to be distinguishable. First, the court did not address whether an unlicensed driver could have a legitimate expectation of privacy in a vehicle. Instead, *Lark* was a probable cause case. The *Lark* court held that defendant's failure to produce his driver's license during a traffic stop was not grounds for a search of his vehicle, absent probable cause to believe that defendant had committed a further offense. *Lark*, 726 A.2d at 299. Here, Defendant Brown does not argue that officers asked him for identification or conducted a search of his car incident to a traffic citation. Brown states that officers accosted him on the street, took keys off his person, and searched the car. Thus, the facts of this case render *Lark* inapplicable.